## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| ANDREAS VON HIRSCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:21-cv-00107-NT |
| | ) | |
| ANGELYN A. OLSON, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIMS

Before me is the Plaintiff's motion to dismiss five of the Defendant's six counterclaims and the Defendant's requests for exemplary damages[1] and attorney's fees. For the reasons stated below, the motion to dismiss is **granted** as to Counterclaim Count IV insofar as it relates to the testamentary disposition and **denied** as to Counterclaim Counts I, II, III, and V.

## BACKGROUND[2]

### I.    Statement of Facts

These counterclaims arise out of an action originally brought by the Plaintiff, Andreas von Hirsch, a citizen and resident of Germany, against the Defendant, Angelyn A. Olson, a resident of Vinalhaven, Maine. Def.'s Original Answer to Pl.'s Compl., Countercl. Against Pl., & Jury Demand ("**Countercl.**") ¶¶ 287–88 (ECF No.

---

[1]    " 'Exemplary damages' is a term that is synonymous with 'punitive damages.' " *Denutte v. U.S. Bank, N.A.*, 2019 ME 124, ¶ 15, 213 A.3d 619, 624. This opinion uses the terms interchangeably.

[2]    The facts below are drawn from the allegations in Olson's Counterclaims, which I take as true for the purposes of deciding a motion to dismiss. *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021).

5). Von Hirsch purchased a home on Vinalhaven in 1975, and soon after hired Bill and Mary Olson, Angelyn Olson's parents-in-law, as the property's caretakers. Countercl. ¶¶ 169, 171–72, 176. After her marriage to their son, Angelyn began to assist Bill and Mary in this role, and she became the primary caretaker in 2000. Countercl. ¶¶ 177–79.

While she was originally hired simply as a summer caretaker, over the years Olson's responsibilities grew to include ensuring the maintenance of von Hirsch's sailboat, overseeing extensive renovations to von Hirsch's Vinalhaven home, and providing medical care to von Hirsch as he recuperated from various physical injuries. Countercl. ¶¶ 183, 187, 191, 214, 217–19, 225, 231–33, 238, 240, 249, 263, 273. Olson's work for von Hirsch also took her abroad on at least one occasion. In the fall of 2019, von Hirsch was locked out of his bank accounts, and he had Olson accompany him to Germany while he sorted out his finances. Countercl. ¶ 267–68. Olson asserts that during the period he was locked out of his accounts, von Hirsch asked her to cover his expenses using her own funds, promising that he would reimburse her at a later date. Countercl. ¶ 269.

Olson alleges that, during her employment with von Hirsch, he repeatedly orally promised that he would leave the Olson family his Vinalhaven property. Countercl. ¶¶ 181, 230, 266. In addition, in 2018, von Hirsch promised to switch Olson's role to a salaried position, with a hefty bonus and a sizable future raise. Countercl. ¶¶ 238–39, 249–50. Olson claims that these promises were memorialized in a handwritten document authored by von Hirsch, titled "Angie's Compensation."

Countercl. ¶ 251; *see* Countercl. Ex. A ("**Angie's Compensation Document**" or the "**Document**") (ECF No. 5-1). This document, dated September 18, 2018, includes the following provisions:

- A yearly salary of $60,000 in 2018, plus an $80,000 bonus;

- A salary increase to $120,000 in 2019 and subsequent years; and

- A "[t]estamentary [d]isposition" of the "Maine house," as well as "upkeep . . . enough for 50k yearly for 15 years."

Countercl. ¶¶ 251–53; Countercl. Ex. A.

On December 23, 2020, von Hirsch terminated Olson's employment. Countercl. ¶ 275.

## II.   Olson's Counterclaims

Several months after ending Olson's employment, in April of 2021, von Hirsch sued Olson, alleging breaches of her fiduciary duties, excessive compensation, breaches of her duty of loyalty, and conversion. Compl. (ECF No. 1). In conjunction with her answer, Olson brought the following counterclaims against von Hirsch.

Counterclaim Count I (Fraud) alleges that von Hirsch used the promises contained in the Angie's Compensation Document to fraudulently induce Olson into remaining in his employ. Countercl. ¶¶ 291–305. Olson asserts that the representations made by von Hirsch in the Document "were false" and that "von Hirsch had no intention to compensate Mrs. Olson in full in the manner prescribed by the [Document] at the time he drafted" it. Countercl. ¶¶ 296, 303. According to Olson, "von Hirsch intended to use his stature and education to his advantage in inducing Mrs. Olson to act in reliance on his representations," and he intentionally

misled Olson in order to "entice her to continue to provide her services as caretaker to his Property, sailboat, and person despite the growing needs and expectations he presented." Countercl. ¶¶ 298, 300. Olson seeks punitive damages on this Count. Countercl. ¶¶ 399–411.

Counterclaim Count II (Breach of Contract) alleges that von Hirsch breached his contract with Olson by failing to compensate Olson for work done between July 2020 and December 2020 in the amount promised in the Angie's Compensation Document. Countercl. ¶¶ 311–13.

Counterclaim Count III (Anticipatory Breach of Contract) alleges that von Hirsch has anticipatorily breached the "testamentary disposition" portion of the Angie's Compensation Document, which, according to Olson, provides that Olson will inherit von Hirsch's Maine home upon von Hirsch's death and receive $50,000 per year for upkeep for fifteen years. Countercl. ¶¶ 325–27. Based on von Hirsch's "present breach of the written agreement" and his "pending allegations and subsequent lawsuit filed against Mrs. Olson," Olson alleges that "it is anticipated that [von Hirsch] has repudiated the remainder of the written agreement" and that his "conduct evidences his presumed refusal to perform." Countercl. ¶¶ 326–27.

Counterclaim Count IV (Promissory Estoppel) asserts that von Hirsch's promise of testamentary disposition of his home is enforceable under a theory of promissory estoppel. Countercl. ¶¶ 335–39, 343.[3] Olson asserts that von Hirsch made

---

[3]     Olson alludes to two further alleged promises that she argues should be enforced under a theory of promissory estoppel. First, Olson alleges that, as outlined in the Angie's Compensation Document, von Hirsch "promise[d] to . . . increase[ ] Mrs. Olson's salary for the year 2019 to $120,000.00," that "von Hirsch made th[is] promise[ ] . . . to induce her into continuing her employment

these promises "to induce her into continuing her employment with him" and claims that "von Hirsch knew that . . .[] Olson was relying on his promises." Countercl. ¶¶ 336, 339.

Counterclaim Count V (Unjust Enrichment) alleges that Olson conferred a benefit on von Hirsch by caring for and maintaining his sailboat and his Vinalhaven home, as well as by providing him personal care.[4] Countercl. ¶¶ 359, 367, 370. Olson claims that von Hirsch was unjustly enriched by these services. Countercl. ¶¶ 360, 368, 374.

In addition to other forms of relief, Olson requests that she be awarded attorney's fees. Countercl. 51.

Von Hirsch has moved to dismiss Counterclaim Counts I–V and Olson's claims for exemplary damages and attorney's fees, arguing that Olson has failed to state a claim upon which relief can be granted. Pl.'s Mot. to Dismiss Countercl. ("**Mot. to Dismiss Countercl.**") (ECF No. 8).

---

with him," and that "Olson agreed to continue her employment and took on the increasing responsibilities that were required of her based on the promise[ ] . . . von Hirsch made to compensate her." Def.'s Original Answer to Pl.'s Compl., Countercl. Against Pl., & Jury Demand ("**Countercl.**") ¶¶ 335–37 (ECF No. 5). Von Hirsch does not address this aspect of Olson's promissory estoppel claim in his motion to dismiss.

Second, Olson claims that in 2019, von Hirsch locked himself out of his bank accounts, and that Olson accompanied him to Germany "to assist him in straightening out his bank accounts." Countercl. ¶ 268. While von Hirsch was locked out of his accounts, Olson says that she paid for von Hirsch's expenses, totaling at least $11,352.02, "under the guise that she would be reimbursed upon Baron von Hirsch's ability to regain access to his bank accounts." Countercl. ¶¶ 269–70, 349. Von Hirsch does not appear to ask for the dismissal of this portion of Olson's promissory estoppel claim. *See* Pl.'s Mot. to Dismiss Countercl. 12–15 (ECF No. 8).

[4]    Olson also brings an unjust enrichment claim seeking repayment of the expenses she incurred on von Hirsch's behalf while he was locked out of his bank accounts, totaling at least $11,352.02. Countercl. ¶¶ 378–79, 382. Von Hirsch does not seek the dismissal of this portion of Olson's unjust enrichment claim. Pl.'s Reply in Supp. of Mot. to Dismiss Countercl. 5 (ECF No. 12).

## DISCUSSION

### I.   Legal Standard

When evaluating a motion to dismiss, I take "as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Alston v. Spiegel*, 988 F.3d 564, 571 (1st Cir. 2021) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). "[A] complaint will survive a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.' " *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" if the facts alleged give rise to a reasonable inference of liability. *Id.* "Plausible" means "more than merely possible." *Germanowski v. Harris*, 854 F.3d 68, 71 (1st Cir. 2017) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)).

Federal Rule of Civil Procedure 9(b) governs the pleading requirements for fraud claims. Per Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he circumstances to be stated with particularity under Rule 9(b) generally consist of the who, what, where, and when of the allegedly misleading representation." *Dumont v. Reily Foods Co.*, 934 F.3d 35, 38 (1st Cir. 2019) (quoting *Kaufman v. CVS Caremark Corp.*, 836 F.3d 88, 91 (1st Cir. 2016)). "[E]lements [that] do not fall within the 'who, what, where, and when' taxonomy . . . need only comply with the plausibility standard that customarily controls the adequacy of pleadings.' " *Foisie v. Worcester Polytechnic Inst.*, 967 F.3d 27, 50 (1st Cir. 2020). The purposes of Rule 9(b)'s heightened pleading requirements are "to place the defendants on notice and enable

them to prepare meaningful responses, to preclude the use of a groundless fraud claim as pretext for discovering a wrong, and to safeguard defendants from frivolous charges that might damage their reputation." *Dumont*, 934 F.3d at 39 (internal quotation marks omitted).

## II. Analysis

### A. Defendant's Omnibus Arguments

Von Hirsch begins his motion to dismiss with two arguments aimed at all of Olson's counterclaims. The first is that any claims for future recompense under the Angie's Compensation Document fail because Olson was an at-will employee. According to von Hirsch, any obligations that he might have had under that Document ended when he fired Olson. Mot. to Dismiss Countercl. 4–5. Von Hirsch develops this argument when he aims specifically at Olson's counterclaim for anticipatory breach of contract, and I will address this argument when I reach that count.

Von Hirsch's second overarching argument is that Olson's claim to future testamentary gifts fails because the promises she identifies are too vague to enforce. Mot. to Dismiss Countercl. 5–7. Testamentary gifts are generally revocable during the testator's lifetime. *See Busque v. Marcou*, 86 A.2d 873, 877 (Me. 1952) ("A will is ambulatory in its nature and may be revoked at any time prior to death."). There is no language in the testamentary disposition provision that suggests irrevocability, and the provision itself is extremely sparse and may lack sufficient detail to allow me to interpret the intention of the parties. *See Forrest Assocs. v. Passamaquoddy Tribe*, 2000 ME 195, ¶ 9, 760 A.2d 1041, 1044 (noting that an enforceable "contract must be

sufficiently definite to enable the court to determine its exact meaning and fix exactly the legal liabilities of the parties" (internal quotation marks omitted)).

In support of this argument, Von Hirsch cites *Ault v. Pakulski*, a case involving a similarly terse provision in a divorce settlement requiring the formation of a trust for payment of education expenses for the couple's children. 520 A.2d 703, 703–04 (Me. 1987). In *Ault*, the Law Court noted that the provision did not make clear "how the future educational trust was to be funded, implemented, or administered." *Id.* at 704. Nor did the provision specify whether the term "education" extended to college or whether the term "children" referred to all of the couple's children or only those who were under the age of eighteen. *Id.* at 705. Based on these holes, the provision was considered "nothing more than an 'agreement to agree.' " *Id.*

The *Ault* case is distinguishable in at least one important sense. In *Ault*, the contract did not specifically define the property (whether college costs or just secondary educational costs) at issue, or who was to benefit from the disposition of that property. Here, the property and the beneficiary are clear. Moreover, even if von Hirsch is correct that the testamentary disposition provision is lacking specificity, in general "courts should be 'reluctant to construe a contract so as to render it unenforceable if that result can be avoided.' " *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 18, 983 A.2d 382, 389 (quoting *Towne v. Larson*, 51 A.2d 51, 53 (Me. 1947)); *see also Ault*, 520 A.2d at 706 (Glassman, J., dissenting) ("If a contract leaves open a key term, the law invokes the standard of reasonableness, and courts will supply the needed term." (citing *Corthell v. Summit Thread Co.*, 167 A. 79, 81 (Me. 1933))). "[L]ack of a

key term is not necessarily fatal to the enforcement of a contract, as long as the missing term does not indicate a lack of contractual intent." *Pelletier v. Pelletier*, 2012 ME 15, ¶ 15, 36 A.3d 903, 908.

At this stage, construing the facts in Olson's favor, I cannot find that any lack of specificity in the testamentary disposition provision indicates a lack of contractual intent. In addition, if I were permitted to look to evidence outside the four corners of the contract,[5] there is evidence, such as von Hirsch's alleged oral promises to Olson regarding the disposition of his property, that could lend support to a finding of contractual intent. *See Ault*, 520 A.2d at 706 (Glassman, J., dissenting) ("Courts should not deny relief on a contract because of vagueness if the parties' intent can be ascertained."). Altogether, many questions remain unanswered. While the argument that the contract is too vague to enforce might ultimately carry the day, I cannot make that determination on the existing briefing.

## B.    Counterclaim Count I – Fraud

Olson's Counterclaim Count I alleges that von Hirsch fraudulently misrepresented the manner in which Olson would be compensated. Olson alleges that von Hirsch made various representations to her about her compensation, including that she would receive a high salary, financial security into the future, and the testamentary disposition of von Hirsch's Vinalhaven home. Olson claims that "von

---

[5]    The parties have not briefed questions such as whether the parol evidence rule or statute of frauds applies.

Hirsch had no intention to compensate Mrs. Olson in full in the manner prescribed by the [Angie's Compensation Document] at the time he drafted" it. Countercl. ¶ 303.

The elements of a fraudulent misrepresentation claim under Maine law are that a "defendant (1) made a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relied upon the representation as true and acted upon it to his damage." *F. Fin. Grp., Ltd. Liab. Co. v. President & Fellows of Harvard Coll.*, 173 F. Supp. 2d 72, 97 (D. Me. 2001).

To survive a motion to dismiss in a federal action like this one, a claimant's fraud claim must satisfy the special pleading requirements of Federal Rule of Civil Procedure Rule 9(b). As the First Circuit has explained, the circumstances constituting fraud must be pleaded with particularity, that is "the pleader ordinarily must 'specify the who, what, where and when' regarding the alleged fraud." *Foisie*, 967 F.3d at 49 (quoting *Alt. Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004)). "Other facets of fraud, such as intent, may be pleaded in general terms." *Id*.

Olson satisfies the basic "who, what, where, and when" requirements as to the circumstances of the fraud under Rule 9(b): the "who" is von Hirsch; the "what" are the promises contained in the Angie's Compensation Document; the "where" is the Document itself; and the "when" is September 18, 2018, the date on the Document. Von Hirsch attacks the fraud counterclaim arguing that it fails to state a claim

because "it is not plausible that von Hirsch would have agreed to pay her a substantial salary for her work, and then, on top of that, to give her an irrevocable promise of several million dollars—an amount orders of magnitude more than even what Olson claims her salary was—as a testamentary gift, simply in exchange for her agreeing to continue to work for him for an unspecified amount of time." Mot. to Dismiss Countercl. 7. But Olson's allegations include not just her naked assertion that this was the deal that von Hirsch offered. She attaches to her Counterclaim the Angie's Compensation Document, which, in addition to provisions about salary and bonuses, includes the provision of a testamentary disposition. She also alleges that her relationship with von Hirsch, an extremely wealthy individual, goes back years and that von Hirsch trusted her with his financial affairs in Maine, asked her to accompany him to Germany on one occasion, and relied on her to help him when he was injured or otherwise needed medical assistance. Countercl. ¶¶ 158, 165, 213–14, 226, 248–49, 268, 272. She further alleges that "the demands of her position continued to increase exponentially." Countercl. ¶ 292. Based on these claims, which on a motion to dismiss I accept as true, Olson has plausibly alleged that von Hirsch made the promises contained in the Angie's Compensation Document in order to persuade her to continue in her role and that her reliance on these promises was justified.

Von Hirsch also contends that Olson failed to allege with particularity that von Hirsch knew that the representations he was making were false at the time he made them. Olson asserts generally that at the time von Hirsch drafted the Angie's

Compensation Document that he "had no intention to compensate Mrs. Olson in full in the manner prescribed . . ." Countercl. ¶ 303. She does not elaborate in her counterclaims as to why von Hirsch made the false statements, but these are facts that are uniquely known to von Hirsch and not easily ascertainable by Olson. *See Foisie*, 967 F.3d at 51. While her allegations as to the basis of scienter are thin, Olson has asserted sufficient facts to allow her fraud claim to survive this motion to dismiss. The motion to dismiss Counterclaim Count I is **denied.**

## C.   Counterclaim Count II – Breach of Contract

Olson's Counterclaim Count II alleges that von Hirsch breached his contractual obligation to pay her for services rendered between July 2020 and December 2020. Based on the Angie's Compensation Document, she argues that, in 2020, she was entitled to a yearly salary of $120,000. Countercl. ¶ 311.[6] Von Hirsch does not dispute that Olson is entitled to some compensation for services rendered in the second half of 2020, but argues that Olson is entitled not to the $10,000 per month allegedly promised under the Angie's Compensation Document, but rather to "reasonable compensation for the work she did." Mot. to Dismiss Countercl. 15. Von Hirsch also vaguely implies that he may not have had the capacity to enter into a

---

[6]   Von Hirsch asks me to limit Olson's breach of contract claims to compensation for work performed between July 2020 and December 2020.  Mot. to Dismiss Countercl. 15. Although Olson references the fact that she was terminated "unilaterally and without cause," she does not appear to argue that von Hirsch breached the agreement by firing her without cause, or that she has a claim for unpaid salary after von Hirsch terminated her employment. *See* Countercl. ¶¶ 322–23. I need not limit Olson's breach of contract claim because her claims are already limited to compensation for the second half of 2020.

binding contract and/or that the contract is unenforceable pursuant to Olson's fiduciary duties. *See* Mot. to Dismiss Countercl. 3.

To prevail on a breach of contract claim under Maine law, there must be "a legally enforceable contract consisting of (1) a meeting of the minds; (2) consideration; and (3) mutuality of obligations." *Bradley v. Kryvicky*, 574 F. Supp. 2d 210, 222 (D. Me. 2008) (citing *Dom J. Moreau & Son, Inc. v. Fed. Pac. Elec. Co.*, 378 A.2d 151, 153 (Me. 1977)). Proof of a breach of contract action consists of three elements: "(1) breach of a material contract term; (2) causation; and (3) damages." *Wetmore v. MacDonald, Page, Schatz, Fletcher & Co.*, 476 F.3d 1, 3 (1st Cir. 2007) (emphasis deleted) (quoting *Energy Recovery Co. v. United Steel Structures, Inc.*, 724 A.2d 1248, 1250 (Me. 1999)); *Beck v. Fed. Nat'l Mortg. Ass'n*, No. 2:13-cv-00090-JAW, 2013 WL 3883846, at *7 (D. Me. July 26, 2013).

Olson plausibly alleges the following facts: that there was a legally enforceable employment agreement that laid out the terms of her compensation; that she fulfilled her obligations under the contract by providing services to von Hirsch as his employee; that von Hirsch breached the contract by failing to compensate her as required under the contract; and that she suffered damages from the breach in the form of lost wages. In regard to von Hirsch's request that Olson's damages be limited to "reasonable compensation," as opposed to the salary allegedly promised to her under the Angie's Compensation Document, I find that Olson has pled enough facts to support her claim for compensation in the amount detailed in the Document. As for von Hirsch's allegations regarding his capacity to contract and Olson's fiduciary

duties, *see* Mot. to Dismiss Countercl. 3, I do not have enough information at this stage to dismiss Olson's breach of contract claim on either basis. The motion to dismiss Counterclaim Count II is **denied**.

### D.     Count III – Anticipatory Breach of Contract

Counterclaim Count III alleges that von Hirsch has anticipatorily breached his promise to leave Olson his Maine home upon his death, as well as $50,000 per year for upkeep for fifteen years. Von Hirsch argues that Counterclaim Count III should be dismissed because Olson has not alleged facts that establish the existence of an enforceable promise. Von Hirsch argues that, if Olson alleges that the testamentary disposition was a provision of her employment contract, then her claim should fail because she "was an at-will employee who could be terminated at any time" and "[a]ny obligations von Hirsch might have had based on the 'Angie's Compensation' document ended when he terminated her at-will employment in 2020." Mot. to Dismiss Countercl. 16. If instead Olson frames her claim as one to enforce a promise to make a testamentary gift, then, von Hirsch argues, "that claim fails as a matter of law for lack of consideration." Mot. to Dismiss Countercl. 16.

I agree that Olson's anticipatory breach of contract claim may prove to be problematic for her. Under Maine law, "[i]t is well settled that a contract of employment for an indefinite length of time is terminable at will by either party." *Burnell v. Town of Kingfield*, 686 A.2d 1072, 1073 (Me. 1996) (quoting *Terrio v. Millinocket Cmty. Hosp.*, 379 A.2d 135, 137 (Me. 1977)). Olson was an at-will

employee,[7] and any future compensation promised to her under the employment contract presumably ended when her employment was terminated. *See Rowell v. Jones & Vining, Inc.*, 524 A.2d 1208, 1211 (Me. 1987).

But von Hirsch's acknowledgement that it is possible to view the Angie's Compensation Document as an employment contract opens the door to Olson's argument that her agreement to keep working was made in exchange for his agreement to give her the house and a maintenance stipend upon his demise. *See* Mot. to Dismiss Countercl. 4 ("If the notes von Hirsch jotted down under the heading 'Angie's Compensation' have any legal significance at all, they amount, at most, to an at-will employment contract of no fixed duration."). Even in at-will employment arrangements, an employer may be liable for a future benefit promised under the employment contract *if* that benefit has already vested. *See Rowell*, 524 A.2d at 1211 (explaining that an employer may "condition the vesting of a benefit right on . . . the performance of services"). The parties have not addressed the issue of whether the testamentary disposition could have vested.

Von Hirsch claims that if you view the testamentary disposition provision as a separate contract, then it fails because an agreement to continue working for von Hirsch, as a matter of law, could not be adequate consideration to support the testamentary disposition provision.[8] Here, the problem for von Hirsch is that the

---

[7]     Olson does not appear to contest that she was an at-will employee. *See, e.g.*, Def.'s Obj. in Opp'n to Mot. to Dismiss Countercl. ¶ 3 (ECF No. 9) (acknowledging without challenging von Hirsch's assertion that Olson was an at-will employee).

[8]     It is unclear why the testamentary disposition provision should be considered separate from the other parts of the contract. The testamentary disposition provision falls under the broader heading "Angie's Compensation" just as the salary and bonus provisions do. And if there is consideration (in

cases he cites are distinguishable, and none of them stands for the proposition that an agreement to keep working is legally insufficient consideration. Mot. to Dismiss Countercl. 16 (first citing *Whitten v. Greeley-Shaw*, 520 A.2d 1307, 1309–10 (Me. 1987) (finding an agreement between a woman and a man having an extramarital affair unenforceable for lack of consideration because the woman's promise not to call the man's home or office without his permission was not requested by him or bargained for); then citing *Dufour v. Stebbins*, 145 A. 893, 894–95 (Me. 1929) (holding that a deceased woman's promise to give or will her daughter and son-in-law $2,000 was unenforceable because "[n]o express contract is proven under which the plaintiffs can show full performance on their part or payment of money due from the decedent"); and then citing *Tozier v. Tozier*, 437 A.2d 645, 649 (Me. 1981) (holding that a father's gift of land to his son was enforceable because the son, in reliance on the gift, had moved to the land and built a house on it)). Particularly given the allegation that Olson was agreeing to take on duties exponentially greater than she had previously performed, I decline to say at this juncture that as a matter of law her agreement could not be adequate consideration.

The Defendant does cite one case in which an employer's *oral* promise to establish a testamentary trust for her caretaker was not sufficient to create an enforceable contract, but that case is also factually distinguishable.[9] *See Estes v.*

---

the form of her agreement to continue to work for von Hirsch) for the salary and bonus provisions of the contract, it is unclear to me why that would be insufficient consideration for the testamentary disposition promise.

[9]      In *Estes*, the court explained that "[t]here [was] no genuine issue of fact concerning the existence of an offer to establish a trust for the plaintiff's benefit as a *quid pro quo* for his continued nursing services." *Estes v. Smith*, 521 A.2d 682, 685 (Me. 1987). Rather, the facts "establish[ed] nothing

*Smith*, 521 A.2d 682 (Me. 1987). And because it was decided at the summary judgment stage, is not particularly helpful to the Defendant on a motion to dismiss.

In sum, too many issues remain unresolved for me to dismiss Olson's anticipatory breach of contract claim at this stage. Although she may face an uphill battle on this count, for now the motion to dismiss Counterclaim Count III is **denied.**

### E.    Count IV – Promissory Estoppel

Counterclaim Count IV alleges that von Hirsch's promise of the testamentary disposition of his home and upkeep payments is enforceable under a theory of promissory estoppel. Von Hirsch argues that the portion of Olson's Counterclaim Count IV that seeks to enforce the alleged testamentary disposition should be dismissed. He asserts that Count IV "fails because a reasonable person in von Hirsch's position would not have expected that Olson would have relied on his scribbled notes to secure her alleged right to receive several million dollars in testamentary gifts; because Olson does not allege that she engaged in the type of action or forbearance necessary to support a promissory estoppel claim; and because no facts are alleged such that enforcement of the alleged promise would be necessary to avoid injustice." Mot. to Dismiss Countercl. 13.

A promise to convey land as a gift or inheritance is enforceable under a theory of promissory estoppel only where a party reasonably relies on the promise. *See*

---

more than a naked promise made by [the employer]" to establish the trust, without any evidence that the employee's continued services served as consideration for the promise. *Id.* Here, by contrast, Olson alleges facts that plausibly support her claim that von Hirsch offered the testamentary disposition, in addition to a salary and a bonus, in exchange for Olson's agreement to continue providing services to him. Countercl. ¶ 317. In other words, Olson has plausibly alleged facts indicating the existence of an offer, acceptance, and consideration.

*Harvey v. Dow*, 2008 ME 192, ¶ 19, 962 A.2d 322, 327. The promisee's reliance must be "foreseeable and reasonable and involve[ ] a definite and substantial change of position which would not have occurred if the promise had not been made." *Id.* (quoting Restatement (Second) of Contracts § 90 cmt. f). "A mere showing that a donee incurred some detriment at the instance of the donor is insufficient to enforce a parol gift. When the donee, however, has made substantial improvements to the land, and the donee has made the improvements in reliance upon the promise to convey the land, courts will enforce the promise to convey." *Id.* at ¶ 17, 962 A.2d at 327 (quoting *Tozier*, 437 A.2d at 648). For example, a promise to convey land is enforceable on a theory of promissory estoppel where the promisee relies on the promise in building a house on the land, or otherwise expends substantial funds in making improvements on the land. *See id.* at ¶ 15, 962 A.2d at 327 ("[G]iven that [the promisee] now has an immobile $200,000 asset on that parcel, 'the circumstances are such that the refusal to enforce the promise to make a gift would work a fraud upon the donee.' " (quoting *Tozier*, 437 A.2d at 648–49)).

Here, by contrast, Olson does not allege that she has made any improvements to the Vinalhaven home, much less any *substantial* improvements, in reliance on von Hirsch's promise. Rather, the only act Olson alleges she took in reliance on the promise of the testamentary disposition is her decision to remain in von Hirsch's employ, *see* Countercl. ¶ 343, which by itself is not sufficient to establish detrimental reliance, *see Ingram v. Rencor Controls, Inc.*, 217 F. Supp. 2d 141, 153 (D. Me. 2002) (noting that a litigant had not alleged facts to support a reasonable inference of

detrimental reliance because he did not "allege that at the time he chose to remain in the defendant's employ he had a higher-paying job offer that he thereby chose to forego," nor "otherwise allege that . . . he necessarily would have found work at a higher salary if he had done so").

Because I can discern no "definite and substantial change of position which would not have occurred if the promise had not been made," *Harvey*, 2008 ME at ¶ 19, 962 A.2d at 327 (quoting Restatement (Second) of Contracts § 90 cmt. f), I find that Olson has not plausibly made out a claim for promissory estoppel to enforce von Hirsch's promise of the testamentary disposition of his Vinalhaven home and upkeep payments. Von Hirsch's motion to dismiss Counterclaim Count IV is **granted**.

### F.    Count V – Unjust Enrichment

Olson's Counterclaim Count V alleges that von Hirsch has been unjustly enriched by Olson's provision of services between July and December 2020 because she has not yet been paid for those services.

At the outset, I reject von Hirsch's argument that Olson's unjust enrichment claims should be dismissed because Olson claims in the alternative that she had a contract with von Hirsch. The Federal Rules of Civil Procedure specifically allow a party to plead alternative, and even inconsistent, claims for liability. Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively . . . ."), (d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency."); *cf. GMAC Com. Mortg. Corp. v. Gleichman*, 84 F. Supp. 2d 127, 136–37 (D. Me. 1999) ("While the Maine Law Court has recognized 'that the existence of a contract precludes recovery on a theory of unjust enrichment'

. . . a party, nonetheless, 'is not precluded from pleading both theories because a factfinder may find that no contract exists and may still award damages on a theory of unjust enrichment.' " (quoting *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 49 n.1 (Me. 1996))).

Moreover, I find that Olson has pled enough facts to sustain an unjust enrichment claim for benefits conferred on von Hirsch in the second half of 2020. Von Hirsh attacks this portion of Olson's claim, contending that Olson did not confer a benefit on von Hirsch during this period because, due to the COVID-19 pandemic, von Hirsch was not able to travel to Maine in 2020 and Olson had "no reason . . . to open von Hirsch's Maine house" that year. Mot. to Dismiss Countercl. 18. Interpreting the facts in favor of Olson, however, I credit her assertion that "[d]espite the fact that Baron von Hirsch was unable to come to the United States in 2020, Mrs. Olson still maintained his assets in the usual way she had been charged year after year," such as by caring for his sailboat and home. Def.'s Obj. in Opp'n to Mot. to Dismiss Countercl. ¶¶ 41–42 (ECF No. 9). Von Hirsch's motion to dismiss Count V is **denied**.

### G.    Exemplary Damages & Attorney's Fees

Olson seeks punitive damages and attorney's fees. To state a claim for punitive damages, the claimant must show underlying tortious conduct. *See Drinkwater v. Patten Realty Corp.*, 563 A.2d 772, 776 (Me. 1989) ("No matter how egregious the breach, punitive damages are unavailable under Maine law for breach of contract."); *Wuestenberg v. Rancourt*, 2020 ME 25, ¶ 19 n.3, 226 A.3d 227, 232 n.3 (holding that a punitive damages claim failed "because there was no underlying tort"). Olson premises her punitive damages claim on her fraudulent misrepresentation

counterclaim. Def.'s Obj. in Opp'n to Mot. to Dismiss Countercl. 14. Because I deny the motion to dismiss Counterclaim Count I, there is an underlying tort on which a claim for punitive damages could rest. Remaining questions as to the appropriateness of punitive damages in this litigation are better saved for another day.

Finally, Olson seeks attorney's fees. "Maine follows the American rule that litigants bear their own attorney fees in the absence of statutory authority or a contractual provision." *Soley v. Karll*, 2004 ME 89, ¶ 10, 853 A.2d 755, 758. Olson does not cite any statutory or contractual authority that would support her claim for attorney's fees. Furthermore, the handwritten document on which Olson bases most of her claims makes no mention of attorney's fees. *See* Angie's Compensation Document. I see no reason why attorney's fees would be granted in this case.

Von Hirsch's motion to dismiss Olson's claim for punitive damages is **denied,** and the motion to dismiss Olson's request for attorney's fees is **granted**.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motion to dismiss the portion of Counterclaim Count IV that relates to the testamentary disposition, and **DENIES** the motion as to Counterclaim Counts I, II, III, and V.

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 13th day of January, 2022.