# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| ANDREAS VON HIRSCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 2:21-cv-00107-NT |
| | ) |
| ANGELYN A. OLSON, | ) |
| | ) |
| Defendant. | ) |

## ORDER ON DEFENDANT'S MOTION TO EXCLUDE TESTIMONY OF PLAINTIFF'S EXPERTS

Before me is the Defendant's motion to exclude the proposed testimony of the Plaintiff's two experts—Mirissa Harrison and Dr. Robert Riley. Def.'s Mot to Exclude Test. of Pl.'s Experts ("**Mot. to Exclude**") (ECF No. 74). For the reasons set out below, the motion is **DENIED**.

## FACTUAL BACKGROUND

This case was brought by the Plaintiff, Andreas von Hirsch, against the Defendant, Angelyn Olson, who served as the longtime caretaker of Mr. von Hirsch's seasonal home on Vinalhaven, Maine. Compl. (ECF No. 1). Mr. Von Hirsch sued Ms. Olson for breach of fiduciary duty and excessive compensation under the Maine Uniform Power of Attorney Act, common law breach of fiduciary duty to render an account, common law breach of the duty of loyalty, and conversion. Compl. 17–23. In his Complaint, Mr. von Hirsch alleges that cognitive symptoms associated with Parkinson's disease "made him vulnerable to exploitation," and that Ms. Olson took

advantage of this vulnerability by siphoning off large sums of money from Mr. von Hirsch's accounts to benefit herself and her family members. Compl. ¶¶ 21, 60–73.

## LEGAL STANDARD

District courts act "as gatekeepers of expert testimony." *Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse Sec. (USA) LLC*, 752 F.3d 82, 91 (1st Cir. 2014). "A district court must 'ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.' " *Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 85 (1st Cir. 2017) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993)). The testimony is considered reliable if it is "based on sufficient facts or data," it "is the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d).

Expert testimony must also be relevant "not only in the sense that all evidence must be relevant, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue." *Bricklayers*, 752 F.3d at 91 (internal quotation marks omitted); *see also* Fed. R. Evid. 702(a). I must examine the expert's conclusions "to determine whether they flow rationally from the methodology employed," and I must exclude testimony where " 'there is simply too great an analytical gap between the data and the opinion proffered.' " *Samaan v. St. Joseph Hosp.*, 670 F.3d 21, 32 (1st Cir. 2012) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

## DISCUSSION

### I.  Ms. Harrison's Testimony

Ms. Harrison is a certified public accountant whom Mr. von Hirsch engaged to conduct an accounting of Ms. Olson's expenditures over the course of Ms. Olson's work for Mr. von Hirsch. Pl.'s Opp'n to Def.'s Mot. to Exclude Test. of Pl.'s Experts ("**Pl.'s Opp'n**") 2 (ECF No. 80). On behalf of the Plaintiff, Ms. Harrison summarized and categorized Ms. Olson's spending from four of Mr. von Hirsch's bank accounts and put all of the data into a spreadsheet that "shows how much Olson spent, the payees, the type of spending (categorized in various ways), and the timing of expenditures." Pl.'s Opp'n 2; Mot. to Exclude Ex. B (ECF No. 74-2).

The Defendant attacks the admissibility of Ms. Harrison's testimony on two grounds: relevance and reliability. I begin with the Defendant's second argument, that Ms. Harrison's testimony is unreliable "because it is not based on sufficient underlying facts." Mot. to Exclude 4. Here, the Defendant points to Ms. Harrison's categorization of a sum of $627,230 as "Olson Family" and claims that Ms. Harrison "testified in her deposition that the Olson Family category was unrelated to Defendant's duties in the course of her employment with Plaintiff." Mot. to Exclude 4.[1] The Defendant asserts that "Harrison testified that she had no idea what the Olson family did to earn the money, other than what she was told by Plaintiff's attorney." Mot. to Exclude 4. The Defendant's argument, for which she offers no legal

---

[1]  The Defendant also points out that Ms. Harrison testified that she had no idea how much money Mr. von Hirsch "spent per year, his net worth, or his real estate holdings." Def.'s Mot to Exclude Test. of Pl.'s Experts 4 (ECF No. 74). I fail to see how her ignorance of this information is in any way disqualifying.

3

authority, seems to be that since Ms. Harrison was fed this information by Plaintiff's counsel it is unreliable.

During the portion of the deposition provided by the Defendant, the following exchange occurs after Ms. Harrison confirms that she created a category called "Olson Family" that contained $627,230:

> Q	Okay. Do you know what work the Olson family did over that 10-year period for that money?
> A	I don't have detail of what the work entailed, no. I have brief recollection – recollection of caretaking the property, maintenance and lawn maintenance.
> Q	Where did you get that information?
> A	In conversations with Attorney Schutz.
> Q	Okay. So did you – do you have any other information about that $627,000 that you characterized as Olson family, do you have any information related to that money that you didn't get from Mr. Schutz or his law firm?
> A	The only information I have that contributed to that amount are bank statements.
> Q	Okay. And the information that you received from Mr. Schutz about what he thought Ms. Olson's duties were, right?
> A.	They are unrelated. Those aren't related. This total $627,230 are direct checks written to an Olson family member.
> Q	And I asked you – right, and I asked you what you thought those were related to or the work they did and you told me you talked to Mr. Schutz and he gave you some descriptions, right?
> A.	Brief, yes, it could be more than that or less than that.
> Q	Right. So other than what Mr. Schutz told you, you had no idea what the Olson family did to earn that money, correct?
> A.	Correct.

Mot. to Exclude Ex. A, at 6–7 (ECF No. 7-41). This exchange is perhaps subject to multiple interpretations, but it is a stretch to claim that Ms. Harrison was saying that the payments characterized as "Olson Family" were not related to compensation for employment activities. Ms. Harrison did state that, other than a general idea of what the Olsons did for Mr. von Hirsch, which she had gleaned from her conversation

4

with the Plaintiff's lawyer,[2] she did not know whether the payments were for activities related to their employment. But she also seems to suggest that *what* the Olson family did to earn the money was irrelevant to her calculations, as that amount was determined only by whether a check was written to an Olson family member. And Ms. Harrison's spreadsheet similarly categorizes the amounts paid to the Olson family without distinguishing between compensation and non-compensation-related payments. Mot. to Exclude Ex. B, at 4. Given the documents submitted by the Defendant, I see no reason to conclude that the underlying facts supporting Ms. Harrison's testimony are unreliable.

The Defendant's argument that Ms. Harrison's testimony is irrelevant is equally unavailing. Although styled as an objection to relevance, the Defendant's argument is actually more a beef with the fact that Ms. Harrison offers no opinions. Mot. to Exclude 3 ("Harrison testified in her deposition that she did not provide any opinions in this matter."). The Plaintiff concedes that Ms. Harrison will simply testify that "Olson spent certain amounts of money at certain times on certain things, and that these expenditures fall into certain categories." Pl.'s Opp'n 4. There can be no question that testimony regarding how Ms. Olson spent Mr. von Hirsch's money is

---

[2] The quoted exchange does not support a claim that Plaintiff's counsel told Ms. Harrison to categorize the expenses as unrelated to compensation. If the Plaintiff's counsel had told Ms. Harrison how to categorize the expenses, and/or if Ms. Harrison had actually categorized the payments to the Olson family as compensation or non-compensation-related, that could be an issue of reliability for the purposes of admissibility. *See Martin v. Bimbo Foods Bakeries Distrib., Inc.*, NO. 5:14-CV-17-BR, 2016 WL 4621075, at *2 (E.D.N.C. Sept. 6, 2016) (excluding expert witness testimony for lack of reliability because expert "relied exclusively on the data [plaintiff's] counsel gave him and did not independently assess the validity of that data").

relevant to determining whether Ms. Olson violated any fiduciary duties and whether she was excessively compensated. *See Bricklayers*, 752 F.3d at 91.

Though not directly addressed by the parties, the real question here is whether Ms. Harrison's testimony falls into the category of "expert" testimony. On the record before me, I am unable to determine whether Ms. Harrison is providing a summary of evidence otherwise within the ken of the jury or whether she adds some specialized knowledge that would help the jury understand the evidence. But even if Ms. Harrison's testimony is not appropriately considered "expert" testimony given the limited scope of her role in the course of this litigation, Ms. Harrison could be offered as a summary witness if the bank records are otherwise admitted into evidence. *See Smith v. City of Chicago,* No. 15-cv-03467, 2019 WL 4825232, at *3 (N.D. Ill. Oct. 1, 2019) (explaining that a "summary witness" may be offered to evaluate and summarize "voluminous" evidence, but that "[w]hen a summary witness simply testifies as to what a party's evidence shows, he does not testify as an expert witness" (internal quotation marks omitted)); *United States v. Stierhoff*, 549 F.3d 19, 28 (1st Cir. 2008) (explaining that a "summary witness's testimony does no more than analyze facts already introduced into evidence"). Accordingly, the motion to exclude Ms. Harrison's testimony is denied, and the decision as to whether Ms. Harrison qualifies as an expert is deferred.

## II.   Dr. Riley's Testimony

Dr. Riley is a Maine-licensed clinical neuropsychologist who the Plaintiff engaged "to review medical records and related information[,] offer an opinion about von Hirsch's vulnerability to financial exploitation . . . in the summer of 2018 . . . [,

6

and] testify about the effects of von Hirsch's dementia diagnosis on any testimony he might give in this proceeding." Pl.'s Opp'n 3. Dr. Riley authored a report that offered observations of Mr. von Hirsch's medical condition and mental state. Mot. to Exclude Ex. D (ECF No. 74-4). Dr. Riley has not met with Mr. von Hirsch in person, nor has he conducted an examination by phone or video conference; instead, he based his observations on Mr. von Hirsch's medical records from 2015 through 2021, an audio recording and transcript of a conversation between Mr. von Hirsch and Ms. Olson, and "various legal documents," including Mr. von Hirsch's Complaint and Ms. Olson's Counterclaims. Mot. to Exclude Ex. D, at 1.

The Defendant argues that Dr. Riley's testimony should also be excluded "because his opinions are not based on sufficient underlying facts," specifically citing Dr. Riley's failure to conduct an actual examination of the Plaintiff. Mot. to Exclude 4–5.

I am not persuaded that Dr. Riley's testimony should be excluded. First, I do not agree with the Defendant that Dr. Riley's failure to conduct an examination of Mr. von Hirsch requires that Dr. Riley's testimony be excluded. As the Plaintiff points out, numerous courts have held that an expert's reliance on medical records, even absent personal examination, does not render expert testimony inadmissible. *See, e.g., Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 591 (7th Cir. 2000); *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1134 (9th Cir. 1998); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 762 (3d Cir. 1994). The Defendant points to no authority from the First Circuit or elsewhere that holds otherwise.

Moreover, "[w]hen the 'adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion.' " *Zuckerman v. Coastal Camps, Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) (quoting *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 119 (D. Me. 2010)); *accord Brown v. Wal–Mart Stores, Inc.*, 402 F. Supp. 2d 303, 308–09 (D. Me. 2005) ("As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury [that] such testimony [must] be excluded on foundational grounds." (internal citations and quotation marks omitted)). "If the factual underpinnings of [the experts'] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of their testimony," not admissibility. *Payton v. Abbott Labs.*, 780 F.2d 147, 156 (1st Cir. 1985). The Defendant will be free to expose any weaknesses in Dr. Riley's testimony during cross-examination. But these alleged weaknesses are not grounds for exclusion. Because the Defendant has shown no basis to exclude Dr. Riley's testimony, the Motion to Exclude is denied at this time.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's Motion to Exclude (ECF No. 74).

SO ORDERED.

                                                /s/ Nancy Torresen  
                                                United States District Judge

Dated this 7th day of April, 2022.