**UNITED STATES DISTRICT COURT
DISTRICT OF MAINE**

| | |
|---|---|
| DIANA WILKE, as representative of ANDREAS VON HIRSCH, | )<br>)<br>) |
| Plaintiff/<br>Counter-Defendant, | )<br>)<br>) |
| v. | ) Docket No. 2:21-cv-00107-NT<br>) |
| ANGELYN A. OLSON, | )<br>)<br>) |
| Defendant/<br>Counter-Plaintiff. | )<br>) |

**ORDER ON POST-TRIAL MOTIONS**

This case was tried before a jury during the week of June 12, 2023. The jury rendered a verdict on June 16, 2023, and judgment was entered by the clerk of court on June 21, 2023. Now before me are: Plaintiff/Counter-Defendant Diana Wilke's Post-Trial Motion for Judgment as a Matter of Law or Alternatively for Entry of Judgment for No Damages Regarding Plaintiff's Promissory Estoppel Claim ("**Wilke's Motion for Judgment as a Matter of Law**") (ECF No. 303); Defendant/Counter-Plaintiff Angelyn Olson's Motion to Enforce Court's Order Regarding Costs Associated with Continuance of Trial Setting ("**Olson's Motion to Enforce**") (ECF No. 306); Defendant/Counter-Plaintiff Angelyn Olson's Motion to Amend Judgment ("**Olson's Motion to Amend**") (ECF No. 308); and Defendant Counter-Plaintiff Angelyn Olson's Motion for Judgment as a Matter of Law, or in the

Alternative, Motion for a New Trial ("**Olson's Motion for Judgment as a Matter of Law**") (ECF No. 309).[1]

## DISCUSSION

### I. Wilke's Motion for Judgment as a Matter of Law (ECF No. 303) & Olson's Motion to Amend (ECF No. 308)

In this case, the jury returned a verdict for Defendant/Counter-Plaintiff Olson on her breach of contract and promissory estoppel claims. *See* Special Verdict Form ¶¶ 8, 10 (ECF No. 301). The jury awarded Olson $0.00 on her breach of contract claim. *See* Special Verdict Form ¶ 9. The jury was not asked to calculate damages on the promissory estoppel claim because, as agreed to by the parties, promissory estoppel is an equitable claim for which the Court must award relief. *See* Tr. of Proceedings of Jury Trial, Vol. IV 989:5–991:11 (ECF No. 319).

Now, Plaintiff/Counter-Defendant Wilke moves for judgment as a matter of law or, alternatively, entry of judgment for no damages, regarding Olson's promissory estoppel claim. Pl.'s Post-Trial Mot. for J. as a Matter of Law or Alternatively for Entry of J. for No Damages Regarding Pl.'s Promissory Estoppel Claim ("**Wilke's Mot. for J.**") 1 (ECF No. 303). Wilke argues that because the jury found in Olson's favor for breach of contract—and thus, necessarily, determined that a contract existed—that Olson may not recover under a theory of promissory estoppel. *See*

---

[1] Plaintiff/Counter-Defendant Diana Wilke also filed a Bill of Costs (ECF No. 313). Pursuant to Local Rule 54.3, "[u]nless within twenty-one days after the filing of a Bill of Costs the opposing party files a written objection, the opposing party shall be deemed to have waived objection and the Clerk shall tax the costs which appear properly claimed." D. Me. Loc. R. 54.3. No objection was filed in this case, so the Clerk will resolve Wilke's Bill of Costs after entry of this Order.

Wilke's Mot. for J. 3. Olson, by contrast, moves to amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). Def./Counter-Pl.'s Mot. to Amend J. 1–3 ("**Olson's Mot. to Amend**") (ECF No. 308).

Under Maine law, "[p]romissory estoppel is unavailable . . . where an enforceable contract governs the same topic as the alleged oral promise." *Bradley v. Kryvicky*, 574 F. Supp. 2d 210, 224 (D. Me. 2008). "[W]here a written contract governs the relationship between the parties, promissory estoppel is a duplicative remedy." *Id.*

> Promissory estoppel is meant for cases in which a promise, not being supported by consideration, would be unenforceable under conventional principles of contract law. When there is an express contract governing the relationship out of which the promise emerged, and no issue of consideration, there is no gap in the remedial system for promissory estoppel to fill. To allow it to be invoked becomes in those circumstances gratuitous duplication or, worse, circumvention of carefully designed rules of contract law.

*Id.* (quoting *All-Tech Telecom, Inc. v. Amway Corp.*, 174 F.3d 862, 869 (7th Cir. 1999)); *see also McLaughlin v. Maine*, No. BCD-CV-15-14, 2016 WL 11577138, at *6 (Me. B.C.D. Feb. 25, 2016) (finding that the relationship between the parties was governed by an enforceable contract, and thus "there is no contractual gap in the relationship . . . for promissory estoppel to fill").

In this case, the jury found that "Andreas von Hirsch or his authorized representative breach[ed] a contract between him and Angelyn Olson." Special Verdict Form 3. As the jury was instructed prior to deliberations, a finding in favor of Olson on her breach of contract claim had to be conditioned on the jury's finding that a contract existed. Tr. of Proceedings of Jury Trial, Vol. V 1042:9–13 (ECF No.

3

320) ("To prove her claim for breach of contract, Ms. Olson must prove that a contract existed between herself and Mr. von Hirsch."). And, as Olson acknowledges, the agreement forming the basis for her breach of contract claim was the same one that gave rise to her promissory estoppel claim. Def./Counter-Pl.'s Resp. to Pl.'s Post-Trial Mot. for J. as a Matter of Law ("**Olson's Resp. to Wilke's Mot. for J.**") 2 (ECF No. 307). As such, there is no contractual gap for promissory estoppel to fill, and promissory estoppel is therefore a duplicative remedy.

Olson concedes that her breach of contract and promissory estoppel claims "rose out of the same employment promise made by [the] Plaintiff to Olson," Olson's Mot. to Amend 2, and she "further acknowledges that the breach of contract and promissory estoppel claims are mutually exclusive," Olson's Resp. to Wilke's Mot. for J. 2. Olson notes, however, that "where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way." Olson's Mot. to Amend 2 (quoting *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962)); Olson's Resp. to Wilke's Mot. for J. 3.

Applying this interpretive principle here, Olson argues that the way to render the jury's verdict consistent is to award damages on her promissory estoppel claim. Olson's Mot. to Amend 3. She speculates that "the most reasonable explanation for why the jury did not award any damages in relation to Olson's breach of contract claim" is that "the jury likely believed that the damages as related to the employment promise by [the] Plaintiff were covered by the jurors finding for Olson on the promissory estoppel claim." Olson's Resp. to Wilke's Mot. for J. 3; Olson's Mot. to

4

Amend 3. Olson therefore urges me to deny Wilke's Motion for Judgment as a Matter of Law and grant Olson's Motion to Amend "to reflect an additional $70,000 in Olson's damages as related to the jury's finding for her on her promissory estoppel claim against [the] Plaintiff." Olson's Mot. to Amend 3.

I am not convinced, however, that Olson's view of the case would render the jury's verdict consistent. As Olson concedes, the jury's verdicts on breach of contract and promissory estoppel are inconsistent as a matter of law. Olson's Resp. to Wilke's Mot. for J. 2. And what makes the claims inconsistent is not the amount of damages awarded for one or the other claim, but rather the fact that the jury found in favor of Olson on both claims, one of which is premised on the finding that a contract did exist and the other available only where no contract exists. Thus, even if there was any evidence for Olson's theory that the jury awarded $0.00 in damages on the breach of contract claim in the belief that the Court would later award damages to Olson on her promissory estoppel claim—which there is not[2]—the *damages* are not what made the jury's answers inconsistent. Rather, the mere fact that the jury found that Olson had proven both a breach of contract claim and a promissory estoppel claim was

---

[2] The more likely explanation is that the jury was simply unaware that the breach of contract and promissory estoppel claims were mutually exclusive. As Wilke points out, "the instruction on promissory estoppel did not spell out the requirement that there be no contract between the parties," and so the jury was not made aware that the claims were a form of alternative pleading. Pl.'s Reply in Supp. of Post-Trial Mot. for J. as a Matter of Law or for Entry of J. for No Damages 3–4 (ECF No. 310). As such, it is not surprising that the jury, having found for Olson on breach of contract, would also find in her favor on her promissory estoppel claim arising from a breach of the same employment promise. And to the extent that Olson is implicitly arguing that the jury instructions or verdict form should have provided clarity on the interplay between the two claims, that argument has been waived. *See Rooney v. Sprague Energy Corp.*, 554 F. Supp. 2d 39, 43 (D. Me. 2008) ("In this Circuit, 'silence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections.'" (quoting *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 253 (1st Cir. 2000))).

5

inconsistent. And awarding damages on the promissory estoppel claim would only compound that inconsistency, not cure it.

As Wilke points out, similar circumstances were presented in another case, *UFE Inc. v. Methode Electronics, Inc.*, 808 F. Supp. 1407 (D. Minn. 1992). There, a jury returned a verdict for the plaintiff on both a contract and promissory estoppel theory, but, "based on the jury's finding that a requirements contract existed between the parties, the court entered judgment in favor of defendants on plaintiff's promissory estoppel claim based on its determination that the breach of contract and promissory estoppel claims were mutually exclusive." *UFE Inc.*, 808 F. Supp. at 1410. The plaintiff moved for an amended judgment or judgment as a matter of law on its promissory estoppel claim, but the court declined to disrupt the trial court determination. *Id.* at 1414–15. The court explained that:

> the evidence UFE proffered to support its promissory estoppel claim was the same evidence underlying its breach of contracts claim, and that UFE produced no evidence of any promises other than those reflected in the requirements contract. Because those claims are mutually exclusive as a matter of law, and because the jury found a requirements contract in fact, UFE's promissory estoppel claims fails. Thus, the court reaffirms that judgment should be entered in favor of defendants on the promissory estoppel claim.

*Id.* Olson offers no way to distinguish *UFE Inc.*, nor does she submit any examples of other cases in which a court has awarded damages on a promissory estoppel claim after the jury found a contract existed that governs the promise.

In sum, because the jury found that a contract governed the employment promise underlying both Olson's breach of contract claim and her promissory estoppel claim, Olson's promissory estoppel claim fails as a matter of law. Wilke's Motion for

6

Judgment as a Matter of Law is therefore granted, Olson's Motion to Amend is denied, and no award of damages will be made on Olson's promissory estoppel claim.

## II. Olson's Motion for Judgment as a Matter of Law (ECF No. 309)

At the close of evidence, the jury also returned a verdict for Plaintiff/Counter-Defendant Wilke on her excessive compensation claim. *See* Special Verdict Form ¶ 4. This claim was brought pursuant to the Maine Uniform Power of Attorney Act, 18-A M.R.S. § 5-912, 18-C M.R.S. § 5-912. *See* Compl. ¶¶ 115–18. The law states that, "[u]nless the power of attorney otherwise provides, an agent is entitled to reimbursement of expenses reasonably incurred on behalf of the principal and to compensation that is reasonable under the circumstances. The factors set forth in section 3-721, subsection 2 should be considered as guides in determining the reasonableness of compensation under this section."[3] 18-C M.R.S. § 5-912.

Prior to deliberation, the jury was instructed as follows in regard to excessive compensation:

> Ms. Wilke on behalf of Mr. von Hirsch has accused Ms. Olson of receiving excessive compensation in violation of the Maine Uniform Power of Attorney Act. Unless the power of attorney otherwise provides, an agent is entitled to compensation for performing their agent duties that is reasonable under the circumstances.

---

[3] Those factors include:
  A. The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the service properly;
  B. The likelihood, if apparent to the personal representative, that the acceptance of the particular employment will preclude the person employed from other employment;
  C. The fee customarily charged in the locality for similar services;
  D. The amount involved and the results obtained;
  E. The time limitations imposed by the personal representative or by the circumstances; and
  F. The experience, reputation and ability of the person performing the services.
18-C M.R.S. § 3-721(2).

7

> In order for Ms. Wilke to prove excessive compensation she must show by a preponderance of the evidence that, one, a fiduciary relationship existed between Mr. von Hirsch and Ms. Olson; two, during the course of the fiduciary relationship Ms. Olson received compensation that was excessive; and three, Mr. von Hirsch has damages or losses caused by Ms. Olson's breach of fiduciary duty to him.
>
> In considering whether Ms. Olson's compensation as a power of attorney was excessive, you may consider the following factors: The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the service properly; . . . two, the likelihood, if apparent to Ms. Olson, that the acceptance of the particular employment will preclude Ms. Olson from other employment; three, the fee customarily charged in the locality for similar services; four, the amount involved and the results obtained; five, the time limitations imposed on Ms. Olson by serving as agent and fiduciary; and six, Ms. Olson's experience, reputation, and ability.

Tr. of Proceedings of Jury Trial, Vol. V 1040:7–1041:8. The jury awarded Wilke, as representative of Andreas von Hirsch, $125,000.00 to compensate von Hirsch for excessive compensation received by Olson. Special Verdict Form ¶ 5.

Olson now moves for judgment as a matter of law or, in the alternative, for a new trial in relation to the excessive compensation claim. Def./Counter-Pl.'s Mot. for J. as a Matter of Law, or in the Alternative, Mot. for New Trial ("**Olson's Mot. for J.**") 5–6 (ECF No. 309). Olson asserts that she is entitled to judgment as a matter of law because the Maine Uniform Power of Attorney Act's excessive compensation provision pertains only to compensation related to work as a power of attorney, and "the evidence and testimony at trial was that Ms. Olson was paid nothing to be Mr. von Hirsch's Power of Attorney." Olson's Mot. for J. 2–3.[4]

---

[4] Wilke contends that this argument has been waived because Olson failed to raise the argument before the case was submitted to the jury. Pl.'s Opp'n to Def.'s Mot. for J. as a Matter of Law 1 (ECF No. 312). But Olson did seek judgment as a matter of law on Wilke's excessive compensation claim

8

However, viewing the evidence in the light most favorable to Wilke, the non-movant, and making all reasonable inferences in her favor, I am not convinced that the evidence is such that a reasonable person could not have reached the conclusion that the jury arrived at. *See Trainor v. HEI Hospitality, LLC*, 699 F.3d 19, 26 (1st Cir. 2012) (articulating the standard of review for motions for judgment as a matter of law). First, the jury instructions reflect Olson's interpretation of the excessive compensation statute, in that they explain that the provision regulates agents' "compensation *for performing their agent duties*." Tr. of Proceedings of Jury Trial, Vol. V 1040:12–14 (emphasis added). Thus, in evaluating whether Olson received excessive compensation, the jury was directed to specifically consider her compensation for performing her duties as von Hirsch's agent. And, viewing the evidence in Wilke's favor, a reasonable person could have concluded that the compensation Olson received was for activities she conducted as von Hirsch's agent per the power of attorney. Olson's Motion for Judgment as a Matter of Law is therefore denied.

### III. Olson's Motion to Enforce (ECF No. 306)

Olson's Motion to Enforce involves an order I entered requiring the Plaintiff to reimburse Olson for costs associated with coming to Maine for jury selection on May 1, 2023. Def./Counter-Pl.'s Mot. to Enforce Ct.'s Order Regarding Costs Associated with Continuance of Trial Setting 1 ("**Mot. to Enforce**") (ECF No. 306). Jury

---

prior to jury deliberations. *See* Tr. of Proceedings of Jury Trial Vol. V 1007:22–1008:7. Finding that the argument is not waived, I proceed to the merits.

9

selection had been set for May 1, 2023, *see* Trial List (ECF No. 136), but had to be rescheduled to allow time to address an issue regarding von Hirsch's competency both at a deposition taken in 2022 and at trial. Order on Mots. in Lim. & Mot. to Substitute Pl. ("**Order on Mots. in Lim.**") 13 (ECF No. 206). The issue of von Hirsch's competency to testify at trial was raised by motion in limine on March 27, 2023. Pl.'s Mot. to Substitute Diana Wilke as Pl. (ECF No. 144). The issue had been alive since March of 2022, when Olson sought to depose Dr. Obermaier, von Hirsch's German neurologist. *See* Report of Hr'g & Order re: Disc. Disputes (ECF No. 95). Plaintiff's counsel had been unable to convince the Plaintiff's own doctor to sit for a deposition and instead opted to rely on his designated expert, Dr. Reilly, a Maine neurologist who had never seen von Hirsch but who had reviewed Dr. Obermaier's report. Order on Mots. in Lim. 1–5. Complicating the matter further, counsel for the Plaintiff indicated to the Court on April 20, 2023 that von Hirsch had a medical condition and could not travel from Germany by air. Notice/Correspondence re: Pl. Air Travel (ECF No. 181).

On April 26, 2023, I held a conference of counsel to discuss the possibility that the trial would have to be rescheduled to allow for a hearing that would give Olson a meaningful opportunity to pursue the question of competency. Min. Entry (ECF No. 194). The next day, I ordered that the case be moved to the June trial list and further ordered that Wilke pay any costs borne by Olson due to the trial delay. Order on Mots. in Lim. 13; Notice (ECF No. 207).

At the time of the April 26th telephone conference, Olson's counsel was already en route to Maine for the May 1st jury selection, and he was driving from Texas rather than flying. Instead of turning back after he learned that the trial and jury selection had been continued, Olson's counsel completed the drive to Maine where he spent two nights, April 29th and 30th, in a Portland hotel. And Olson came down to Portland and stayed overnight on April 30th and May 1st. Olson's counsel then drove to New York and flew back to Texas from LaGuardia Airport on May 6, 2023. Olson's counsel sought from Wilke reimbursement in the amount of $3,031.19, which comprised the Portland hotel expenses for both himself and his client, the flight from LaGuardia to Dallas, and mileage from Dallas to Portland and from Portland to New York. Wilke's counsel balked and tendered a check for $1,299.44, which would have covered the costs of round-trip airfare from Dallas to Portland and the hotel cancellation fees.

Olson now moves to enforce my order and require Wilke to pay $3,031.19. Mot. to Enforce 1–4. Wilke argues that my order regarding costs implied reasonable costs and that it was unreasonable for Olson's counsel to drive to Maine instead of flying and to continue driving to Maine after learning that the trial had been continued, or for Olson and her counsel to spend two nights in Portland hotels after jury selection was postponed. Pl.'s Opp'n to Def.'s Mot. to Enforce Ct.'s Order Regarding Costs Associated with Continuance of Trial Setting ("**Plaintiff's Opp'n**") 3–6 (ECF No. 314). Olson filed no reply.

As to Wilke's first contention, I ordered that Wilke pay "any costs borne by the Defendant in relation to the delay of trial." Order on Mots. in Lim. 13. As a reminder,

11

I ordered these costs in part to serve as a sanction for Wilke's eve-of-trial request to declare von Hirsch incompetent and to substitute Wilke as the Plaintiff at trial, and my order did not specify a particular mode of transportation that Olson's counsel should use. I said "any costs" incurred by Olson as a result of the delayed trial. While Wilke tries to frame Olson's counsel's decision to drive to Maine as unreasonable "for one day of jury selection," Pl.'s Opp'n 3, I do not see it that way. When Olson's counsel began driving to Texas, before I held the April 26th conference, he likely expected that he was coming to Maine both for jury selection (which can take up to two days) and for trial, which the parties estimated would span six days. So I do not see it as per se unreasonable for Olson's counsel to have opted to drive to Maine from Texas for what he thought would be jury selection, trial preparation, and a six-day trial.[5]

I agree with Wilke, however, that it is not reasonable to make Wilke pay for Olson's counsel's decision to continue to drive to Maine after learning that the trial had been moved to June. Olson's counsel began driving to Maine before I postponed trial, and it is fair and reasonable for him to recover the costs that he incurred up to the point where he learned of the continuance plus the costs that he would have

---

[5]     The case cited by Wilke to the contrary, *Nieto v. Kapoor*, No. CIV 96-1225 MV/JHG, 2001 WL 37125028 (D.N.M. June 12, 2001), is inapposite. There, the court was analyzing whether it was reasonable for the other side to pay the additional travel-time hours of attorneys' fees associated with counsel's unexplained decision to drive, not about the inherent cost of that mode of transportation compared to airfare. Here, Olson is not seeking any attorneys' fees relating to her counsel's drive to Maine. I also note that, had I compelled von Hirsch to attend trial, he was not going to fly to Maine from Germany but was instead planning to take a longer and potentially more costly route via ship on the Cunard line. *See* Notice/Correspondence re: Pl. Air Travel (ECF No. 181); Pl.'s Mot. to Continue Jury Selection and Trial and for Date Certain for Trial (ECF No. 220).

incurred to get back home to Texas if he had immediately turned around. To figure out where that hypothetical turning point would be, I must do a little estimating.

My order postponing trial was entered in the evening of April 27, 2023, at 5:12 p.m. That is when Olson's counsel should have stopped driving to Maine. According to a declaration submitted by one of Wilke's attorneys in connection with her opposition to Olson's Motion to Enforce, on April 28, 2023 at 12:17 p.m., Olson's counsel called counsel for Wilke from "somewhere in the Midwest . . . he may have said Cleveland" and told Wilke's counsel that he was still coming to Maine despite my order the day before postponing trial by a month. Decl. of Harold C. Pachios (ECF No. 314-1). I take judicial notice of the shortest driving route from Dallas, Texas to Portland, Maine that passes through Cleveland. *See United States v. Orozco-Rivas*, 810 F. App'x 660, 668 n.7 (10th Cir. 2020) (taking judicial notice of Google Maps driving directions from one location to another). Based on the fact that Olson's counsel was in Cleveland around noon on April 28th, it appears he drove about half a day after learning of the trial's postponement. A morning's drive south of Cleveland on that driving route puts counsel around Louisville, Kentucky, so I will assume that Olson's counsel was near Louisville when he could have turned around. It is 835 miles from Dallas to Louisville; roundtrip it would be 1,670 miles. At the current IRS mileage rate of $0.655 per mile, had Olson's counsel aborted his trip to Maine and returned home, he would have incurred $1,093.85 for his travel. That is the amount Olson is entitled to recover for her attorney's mileage.

13

I also agree with Wilke that it is not fair to assess Wilke with the expenses associated with Olson's counsel's decision to not cancel his and Olson's Portland hotel reservations. Olson is entitled only to what the cancellation fee for those rooms would be, $389.00 for one and $199.26 for the other. Based on the foregoing, I find that the costs borne by Olson in connection with the delay of trial total $1,682.11. Wilke must tender that amount to Olson to satisfy Wilke's obligations under my order.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** Wilke's Motion for Judgment as a Matter of Law (ECF No. 303) and **DENIES** Olson's Motion to Amend (ECF No. 308). The Court **DENIES** Olson's Motion for Judgment as a Matter of Law (ECF No. 309) and **GRANTS IN PART** Olson's Motion to Enforce (ECF No. 306).

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 19th day of September, 2023.